APPELLANT PRO SE

ATTORNEY FOR APPELLEE
Chad D. Wuertz
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court



_____

No. 49A04-1307-PL-316

GERSH ZAVODNIK,

*Appellant (Plaintiff below),*

v.

IRENE HARPER,

*Appellee (Defendant below).*

_____

Appeal from the Marion Superior Court, Civil Division 3, No. 49D03-1008-PL-036797
The Honorable Patrick L. McCarty, Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-1307-PL-316

_____

**September 30, 2014**

**Per Curiam.**


The trial court dismissed Mr. Zavodnik's action under Indiana Trial Rule 41(E), and the Indiana Court of Appeals dismissed his appeal for failure to file a timely brief and appendix. We now deny transfer by this per curiam opinion, which also gives guidance to this state's courts on some options when confronted with abusive and vexatious litigation practices.


**Background**

Plaintiff Gersh Zavodnik is a prolific, abusive litigant. A search of his name brings up 123 cases in Marion County and other counties on the Odyssey case management system (which

is not yet in place in all Indiana counties). All but three of those cases were filed since January 2008. Mr. Zavodnik is also a party in thirty-four cases before the Court of Appeals and this Court, including twenty-three special judge requests.

Mr. Zavodnik's submissions on appeal do not give any indication of the nature of his complaint against the defendant, but the trial court's fifteen-page chronological case summary ("CCS") for this case shows it was filed on August 20, 2010. After procedural maneuvering by Mr. Zavodnik that included a change of judge under Indiana Trial Rule 53.1, several more unsuccessful attempts for another change of judge, and an attempt to disqualify the defendant's counsel, the trial court dismissed the case on April 4, 2013, for failure to prosecute or comply with applicable rules. T.R. 41(E). After the trial court denied Mr. Zavodnik's motion to correct error, he filed a motion to proceed in forma pauperis ("IFP"), presumably on appeal, which the trial court also denied.

Mr. Zavodnik filed a timely notice of appeal on July 2, 2013, and a motion to proceed IFP on September 20, 2013. The Court of Appeals denied that motion, two subsequent motions to reconsider, and a motion by Mr. Zavodnik to compel the trial court to correct the record. It also set a deadline to file an appellant's brief by November 8, 2013. Mr. Zavodnik neither filed a brief nor paid the filing fee. On appellee's motion, the Court of Appeals dismissed the appeal with prejudice on January 29, 2014, citing Mr. Zavodnik's failure to file a timely brief and appendix. This Court granted Mr. Zavodnik leave to file a petition to transfer without pre-paying the filing fee, and his transfer petition was shown as filed on April 29, 2014. The appellate CCS spans over six pages.

The trial court CCS and appellate CCS reveal numerous motions and other filings that are defective, repetitive, and lacking merit. Mr. Zavodnik's filings often contain bewilderingly lengthy titles, one example being:

> Appellant's Verified Motion to Compel the Clerk of the Trial Court to Provide the Entire Record as Opposed to the Partial Record and to Extend Time for Brief to Be Filed Due to the Fact that the Appellant Does Not Have the Full Certified Record and the Record Needs to Be Complete and Fixed (Which Will Require Time) Because of the Clerk's Error in Providing Only a Partial Record or Alternatively to Relinquish Jurisdiction Back to the Trial Court by Mandating It

2

to Fix the Record (the CCS) and to Provide the Court of Appeals and the Parties with the Corrected Full and Complete Fixed Record or Alternatively to Order the Clerk of this Court to Fix the CCS and to Provide the Complete Record or Alternatively to Allow the Appellant to Use His Own CCS Printed out by Him from the Odyssey Website.

One effect of such titles is to burden the personnel making entries on the CCS. Mr. Zavodnik's filings are similarly voluminous—for two examples, his response to the appellee's two-page motion to dismiss in this case was close to an inch thick; and in the trial court, the defendant filed a motion to strike "Plaintiff's 4.3 Pound Motion for Default Judgment." Such voluminous filings burden both opposing parties and the courts, the latter of which must house, store, and in some cases eventually microfilm the filings.

Nothing Mr. Zavodnik has filed or done in this case shows any desire to litigate this case expeditiously to resolution on the merits. Rather, he has burdened the opposing party and the courts of this state at every level with massive, confusing, disorganized, defective, repetitive, and often meritless filings. And this Court has previously warned Mr. Zavodnik against continuing such abusive and burdensome litigation tactics. Last year, we described his voluminous, dilatory, and often meritless filings in another case, and the burdens imposed by those tactics:

> The trial court Chronological Case Summary for this case shows that the case was originally filed on September 27, 2010. During the time this case has been pending, the Plaintiff has filed voluminous motions, notices, objections, and other documents, including numerous attempts to obtain a change of judge or venue. Several judges have already presided over this case. Since January 17, 2013, the Plaintiff has filed six applications for withdrawal of the case and appointment of a special judge under Trial Rule 53.1 for the trial court's alleged failure to timely act on various matters. Each time he filed such an application, he prevented the trial court judge from advancing the case until the application was resolved, making it more difficult for the judge to rule on pending matters. Each time he filed such an application, the Executive Director of the Division of State Court Administration was required to analyze the allegations to determine whether a violation had occurred. The Executive Director determined that five of the Plaintiff's applications stated no cause for withdrawing the case under Trial Rule 53.1. However, on August 28, 2013, the Executive Director determined that there had been a delay that would support withdrawing the case under Trial Rule 53.1.

> By order dated September 9, 2013, this Court entered an order, signed by Chief Justice Dickson, remanding jurisdiction to the trial court, finding that

3

naming a new judge would not accomplish the purpose of Trial Rule 53.1, which is to expedite litigation.

> On October 17, 2013, the Plaintiff filed a 200-page "Plaintiff's Set of the Verified Motions" ("Set of Motions"), accompanied by an assortment of exhibits that are nearly three inches thick. On October 22, 2013, the Plaintiff filed a 173-page "Plaintiff's Supplemental Motion in Objection to Justice Dickson's Order to Remand Judge McCarty Back on This Case and in Objection to Judge McCarty Presiding over This Case in Numerous Violations of Rules, Law and Zavodnik's Rights" ("Supplemental Motion"), accompanied by a half-inch stack of exhibits. The Plaintiff's central request is for appointment of a three-Justice panel to review the September 9, 2013, order signed by the Chief Justice. The Plaintiff asserts that the Chief Justice had no authority to remand jurisdiction to the current trial court judge.

Zavodnik v. Margulyan, Cause No. 49S01-1302-SJ-110 (Oct. 25, 2013). Mr. Zavodnik argued that this Court had no authority to remand jurisdiction without naming a new judge. Id. We rejected that claim because Trial Rule 53.1(E)(2) gives this Court discretion to "appoint[] . . . a special judge **or such other action deemed appropriate by the Supreme Court**" if the time limits of Rules 53.1 or 53.2 have expired. Id. But we also issued a warning to Mr. Zavodnik:

> . . . Plaintiff appears to be using Trial Rule 53.1 in a scattershot manner to hinder the progress of this litigation and to burden the trial court, this Court, and its agencies. **Further misuse of Trial Rule 53.1 or any other litigation procedure may subject the Plaintiff to sanctions**.

> The Court finds no basis for the Plaintiff's request to review or reconsider this Court's September 9, 2013, order remanding jurisdiction of this case to Judge McCarty or for any of the other requests in the 373 pages of his motions.

Id. (emphasis added).

As a matter of grace, this Court will once again decline to impose sanctions on Mr. Zavodnik. But we will provide the courts of this state with guidance on options available to sanction and otherwise restrict the abusive and burdensome litigation tactics practiced by Mr. Zavodnik and a small number of other litigants in this state.

4

**Discussion**

On transfer, Mr. Zavodnik argues that the trial court and Court of Appeals (1) erroneously denied him IFP status, (2) erroneously refused to "correct, fix and complete the record," and (3) repeatedly discriminated against him. His first claim is moot, because the Court of Appeals did not dismiss for failure to pay the filing fee, but for failure to timely file his brief and appendix in accordance with well-settled law. His second claim is waived because he fails to show any effort to present his request to the trial court in the first instance as the Appellate Rules require. And his final claim is waived because he fails to support it with cogent argument or citation to relevant authority. We therefore deny transfer and turn our attention to procedures for trial courts to curtail abusive litigation practices.

**I.    Litigants Do Not Have a License to Abuse the Litigation Process**

Every resource that courts devote to an abusive litigant is a resource denied to other legitimate cases with good-faith litigants. *See* Sumbry v. Boklund, 836 N.E.2d 430, 432 (Ind. 2005). There is no right to engage in abusive litigation, and the state has a legitimate interest in the preservation of valuable judicial and administrative resources. *See* Parks v. Madison Cnty., 783 N.E.2d 711, 724 (Ind. Ct. App. 2002), *trans. denied*.

A.  Statutes and rules addressing abusive litigation practices.  Both the Indiana General Assembly and this Court have given the courts of this state tools to deal with abusive litigation practices.  Indiana Code § 34–52–1–1(b) (2008) allows a court in a civil action to award attorney's fees to the prevailing party if the court finds that the other party asserted a claim that was frivolous, unreasonable, or groundless, or litigated an action in bad faith.  And because the threat of monetary sanctions may do little to deter abusive litigants who are essentially judgment-proof, the Indiana General Assembly has enacted procedures to prevent abusive civil litigation by criminal "offenders."  Indiana Code § 34-58-1-2 (2008) ("the Screening Statute") authorizes a court to review an offender's claim and bar it from going forward if it is frivolous (that is, made primarily to harass or lacking an arguable basis in law or fact), is not a claim on which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.

Then under Indiana Code § 34-10-1-3 (2009) ("the Three Strikes Statute"), offenders who have had three suits dismissed under the Screening Statute are prohibited from filing new IFP complaints unless they are "in immediate danger of bodily injury." *See also* Smith v. Wrigley, 925 N.E.2d 747 (Ind. Ct. App. 2010) (holding the Three Strikes Statute does not violate the open courts or privileges and immunities clauses of the Indiana Constitution), *trans. denied*.

Finally, rules of procedure promulgated by this Court allow courts to assess damages and other sanctions to those engaging in abusive tactics, including failure to cooperate with discovery, *see* Ind. Trial Rule 37; making affidavits relating to summary judgment in bad faith, *see* T.R. 56(G); bad faith filing in the wrong county, *see* T.R. 75(C); and filing an appeal that is frivolous or in bad faith, *see* Ind. Appellate Rule 66(E).

B.  Inherent power of courts to limit abusive litigation practices.  Even apart from the Screening and Three Strikes Statutes (which do not apply to abusive litigants who are not "offenders") or the Trial Rules, courts have inherent authority to impose reasonable restrictions on any abusive litigant.  Prior to the enactment of the Screening and Three Strikes Statutes, the Court of Appeals had established special pre-filing screening requirements for particular offenders with histories of repeated, frivolous litigation.  *See* Sumbry v. Misc. Docket Sheet for Year 2003, 811 N.E.2d 457 (Ind. Ct. App. 2004), *trans. denied*; Sims v. Scopelitis, 797 N.E.2d 348 (Ind. Ct. App. 2003), *trans. denied*; Parks v. State, 789 N.E.2d 40 (Ind. Ct. App. 2003), *trans. denied*.  The litigation history of these particular litigants consisted of repeated attempts to relitigate matters that had already been fully litigated and/or suits against defendants who were immune.  The restrictions in Sims, which are similar to those in the other two cases, follow:

> (1) Prior to filing any such lawsuit, Sims shall submit to the trial court a copy of the complaint he wishes to file; (2) Sims shall also file a copy of all of the relevant documents pertaining to the ultimate disposition of each and every previous case instituted by Sims against the same defendant or emanating, directly or indirectly, from any alleged conspiracy by public officials . . . ; (3) Sims shall file a legal brief, complete with competent legal argument and citation to authority, explaining to the court why the new action is not subject to dismissal by application of the doctrines of res judicata, collateral estoppel, or law of the case. If, after reviewing these materials, the trial court determines that the proposed lawsuit is frivolous, malicious, fails to state a claim upon which relief may be granted, or is otherwise utterly without merit, the court shall dismiss with

prejudice the proposed complaint; (4) Sims is required to verify his new complaint pursuant to Indiana Trial Rule 11(B); and (5) Sims is specifically instructed to attach to such complaint a separate copy of this final section of the instant opinion.

797 N.E.2d at 352.

In a case in which a taxpayer brought an action seeking to enjoin the sale of bonds to finance construction of a new high school, the trial court dismissed the action and enjoined the taxpayer and other members of an association of which the taxpayer was a member from filing further suits to delay construction and financing of new high school.  In affirming, this Court stated:

> As to the trial court's injunction preventing Huber and other members of the Franklin County Taxpayers Association from filing further actions, we find no error. **Injunctive relief may be granted when the plaintiff's production of litigation amounts to an abuse of process.** The trial court merely enjoined the parties from filing public lawsuits on the same subject matter—suits which they had no right to file.

Huber v. Franklin Cnty. Cmty. Sch. Corp. Bd. of Trustees, 507 N.E.2d 233, 238 (Ind. 1987) (emphasis added; citations omitted).

In Gorman v. Gorman, 871 N.E.2d 1019 (Ind. Ct. App. 2007), *trans. denied,* the Court of Appeals held that a trial court acted within its discretion when it required a former wife to post a $50,000 appeal bond in her action against her former husband and his former attorney in which she alleged numerous claims, including fraud, criminal conversion, and obstruction of justice. Although the trial court awarded substantial amounts to the former husband and former attorney in actual and punitive damages after finding that the former wife's claims were frivolous, damage awards would not serve as a deterrent to prevent filing frivolous appeals since the former wife was essentially judgment-proof.  In addition, as a sanction for filing frivolous appeals, the Court of Appeals dismissed the former wife's appeals with prejudice and imposed an order that enjoined her from filing future appeals without seeking leave of the Court of Appeals.  The clerk was ordered to return unfiled any documents she attempted to file in violation of this order.

Courts in other jurisdictions have also imposed restrictions on abusive litigants. In Federal Land Bank of St. Paul v. Ziebarth, 520 N.W.2d 51 (N.D. 2004), the North Dakota Supreme Court held that the "open courts" provision of North Dakota's Constitution does not confer an absolute right of access to courts, but must be interpreted in light of superior rights of public and necessities of occasion and may, under appropriate circumstances, be limited by narrowly tailored injunctive relief. The court upheld an injunction precluding a frequent litigant from further litigation on a mortgage foreclosure and related issues without first paying prior judgments or obtaining leave of court. *See also* Matter of Whitaker, 8 Cal.Rptr.2d 249 (Cal. App. 1992) (barring further pro se litigation by prolific, abusive litigant without first obtaining leave of court).

The courts of this state, after due consideration of an abusive litigant's entire history, may fashion and impose reasonable conditions and restrictions, guided by those in the statutes, rules, and cases outlined above, on the litigant's ability to commence or continue actions in this state that are tailored to the litigant's particular abusive practices.

## II.     Pro Se Litigants Must Play by the Rules

Mr. Zavodnik has argued that the system is unfairly biased against him as a pro se litigant. Mr. Zavodnik has every right to represent himself in legal proceedings, but a pro se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented. *See* Matter of G.P.U., 4 N.E.3d 1158 (Ind. 2014). "[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986) (denying IFP application and dismissing appeal). Even if a court may take reasonable steps to prevent a good faith pro se litigant from being placed at an unfair disadvantage, an abusive litigant can expect no latitude.

Contrary to Mr. Zavodnik's arguments, the system actually imposes more restrictions on represented parties, at least indirectly through regulation of their attorneys. For instance, an attorney may be sanctioned for a willful violation of the rule that an attorney's signature on a pleading constitutes a certificate that the attorney has read the pleading; that to the best of the

8

attorney's knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay. *See* T.R. 11(A). In addition, attorneys may be disciplined for abusive litigation practices. *See, e.g.,* Prof. Cond. Rules 3.1 (asserting a position for which there is no non-frivolous basis in law or fact); 3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal); 3.4(d) (making a frivolous discovery request); 8.4(d) (engaging in conduct prejudicial to the administration of justice). Because these rules have no application to pro se litigants, it is all the more important that courts be able to fashion appropriate sanctions for abusive pro se litigants.

### III.     Litigants Do Not Have an Unfettered Right to Proceed In Forma Pauperis

It has long been the policy of this state that arbitrary economic discrimination in the halls of justice is wrong, and from the date of its admission to the Union, Indiana has been a leader in providing indigent persons with fair treatment while in court. *See* Campbell v. Criterion Group, 605 N.E.2d 150, 157, 159 (Ind. 1992). To this end, a person without sufficient means to prosecute an action may apply for leave to prosecute as an indigent person, i.e., IFP, and thus be relieved of certain requirements, including the requirement to prepay a filing fee. *See, e.g.,* Ind. Code § 34-10-1-1 (2008) ("IFP Statute"); Ind. Code § 34-10-1-2(b) (2008); Ind. Appellate Rule 40.

However, the right to invoke this privilege is not without conditions or limits. The IFP Statute places the burden upon the party seeking to proceed IFP to demonstrate that he or she is both indigent and without sufficient means to prosecute the action or bring an appeal. *See* Sholes v. Sholes, 760 N.E.2d 156, 160 (Ind. 2001); Campbell, 605 N.E.2d at 159. A request to proceed IFP necessarily requires the consideration of relevant facts, which may require an evidentiary hearing. *See* Offutt v. Sheehan, 168 Ind. App. 491, 344 N.E.2d 92, 101 (1976). A court need not take an applicant's representations and documents at face value,[1] but in appropriate circumstances should inquire into the practicalities of the applicant's financial resources. We note that Mr. Zavodnik has somehow summoned the financial wherewithal to produce probably

---

[1] We note that in support of his request for IFP status, Mr. Zavodnik provided the Court of Appeals with a stack of documents from the Social Security Administration, primarily concerning members of his family and consisting mostly of irrelevant boilerplate information.

tens of thousands of pages of filings in well over 100 cases he has brought. Courts may rightfully explore how such an applicant can afford such expenses but claim to lack sufficient means to pay a filing fee. "Indigency determinations present a subject for the sound discretion of the trial court, and a very clear case of abuse must be shown before this discretionary power can be interfered with." Campbell, 605 N.E.2d at 159.

In addition, the legislature has provided: "The court shall deny an application made under [the IFP Statute] if the court determines . . . [t]he applicant is unlikely to prevail on the applicant's claim or defense." Ind. Code § 34-10-1-2(d). Without defining the exact parameters of this directive, we conclude that IFP status may be properly denied if the court determines that the applicant is asserting a claim that is frivolous or upon which relief cannot be granted, is seeking monetary relief from a defendant who is immune, or is attempting to relitigate a claim that is barred by res judicata, collateral estoppel, or law of the case. *Cf.* Ind. Code § 34-58-1-2 (the Screening Statute). A court may also revoke a litigant's IFP status as a sanction for abusive litigation practices during a proceeding, including baseless attempts to obtain a change of judge under T.R. 53.1 or otherwise. We note that even the United States Supreme Court has limited an abusive petitioner's ability to proceed IFP based on his history of filing frivolous petitions. *See* Matter of McDonald, 489 U.S. 180 (1989). Those who abuse the state's legal system cannot expect to do it with the aid of a state subsidy.

## IV. Courts May Place Reasonable Limits on Filings by Abusive Litigants

This Court's rules of procedure impose page or word limitations, formatting requirements, and organizational mandates on some documents. *E.g*., Ind. Appellate Rules 43, 44, and 46. Mostly, however, the rules allow broad latitude in how litigants present their requests and arguments to a court. Most litigants do not abuse the rules' general lack of explicit restrictions. But Mr. Zavodnik has, by habitually presenting filings and supporting documents that are massive, disorganized, repetitive, at times barely legible, and often of dubious relevance. He files motions that are overlapping, supplements to motions, and repeated motions for reconsideration. In addition, his filings often do not conform with the explicit requirements of the rules, leading to return by the clerk for correction and deemed filed on the date tendered when eventually corrected. These practices create confusion and put an enormous burden on the

court, its staff, the clerk, and opposing parties. When a litigant makes a practice of such abusive filings, a court may place reasonable restrictions on the litigant's filings tailored to the particular abuses of that litigant.

After due consideration of a litigant's history of abuse, a court may be justified in imposing restrictions such as the following:[2]

> Require the litigant to accompany future pleadings with an affidavit certifying under penalty of perjury that the allegations are true to the best of the litigant's knowledge, information, and belief.

> Direct the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action.

> Direct that future pleadings will be stricken if they do not meet the requirements that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall be simple, concise, and direct." T.R. 8(A)(1) and (E)(1).

> Require the litigant to state clearly and concisely at the beginning of a motion the relief requested.

> Require the litigant to provide specific page citations to documents alleged by the litigant to support an argument or position.

> Limit the litigant's ability to request reconsideration and to file repetitive motions.

> Limit the number of pages or words of pleadings, motions, and other filings.

> Limit the length of the title that may be used for a filing.

> Limit the amount or length of exhibits or attachments that may accompany a filing.

> Instruct the clerk to reject without return for correction future filings that do not strictly comply with applicable rules of procedure and conditions ordered by the court.

## V.  Judges Should Not Bow to Baseless Demands for Disqualification

Mr. Zavodnik's abusive litigation practices in this case and others have included unrelenting attempts to replace the judges presiding over his cases for alleged delays in rulings pursuant to

---

[2] These suggestions are taken in part from <u>Procup v. Strickland</u>, 792 F.2d 1069, 1072-73 and 1073 n.9 (11th Cir. 1986).

T.R. 53.1 and for alleged bias, prejudice, or misconduct by the judge. But judges presiding over a case are not required to disqualify themselves as a result of a litigant's unfounded accusations, abusive tactics, or attempts to manipulate the system. To the contrary, judges have an affirmative duty to preside over cases unless disqualification is mandatory. Rule 2.7 of the Code of Judicial Conduct states: "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." The comment to this rule provides:

> Judges must be available to decide the matters that come before the court. Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

Correspondingly, Rule 2.11(A) of the Code of Judicial Conduct requires disqualification only when "the judge's impartiality might **reasonably** be questioned, including [when the] judge has a **personal** bias or prejudice concerning a party . . . ." (Emphasis added.)

The law starts with the presumption that a judge is unbiased and unprejudiced. A judge's exposure to evidence through judicial sources is generally insufficient to establish bias. The fact that a litigant has appeared before a judge in prior cases does not establish bias or prejudice. Prejudice is not inferred from adverse judicial rulings. Mandatory disqualification requires a showing of a personal, individual bias against the litigant. *See* Garland v. State, 788 N.E.2d 425, 433 (Ind. 2003). A raw accusation of bias creates no reasonable question about the judge's impartiality. *See* Tri Lakes Regional Sewer Dist. v. Geiger, 830 N.E.2d 890, 891 (Ind. 2005). A party cannot be permitted to disqualify a judge simply by alleging bias. *See* id.

In Matter of Appointment of a Special Judge In Wabash Circuit Court, while a proceeding was pending in the Wabash Circuit Court, the defendants (a husband and wife) filed a third party complaint naming the presiding judge as a third party defendant. 500 N.E.2d 751 (Ind. 1986). The judge then filed a certification for the appointment of a special judge under

T.R. 79, which requires recusal when a judge is a party to the proceeding. But this Court declined to appoint a special judge:

> The circumstances so revealed show prima facie that the defendants in a civil action are engaged in a pattern of conduct the purpose of which is to totally stultify the judicial power of the Wabash Circuit Court as it may be directed toward them. . . . Their goal of insulating themselves from judicial authority is being accomplished through the artifice of filing a claim against the sitting judge, thereby imposing upon the judge the automatic duty of self-disqualification required by said rule. If this can be successfully achieved by the filing of specious claims, it can be repeated when any successor judge assumes jurisdiction in their case. The end result of the success of such a plan is constitutionally intolerable.

> . . . .

> Within these unusual circumstances, it would be pointless to appoint a successor judge to assume the jurisdiction of the Wabash Circuit Court in the case pending below. There is a strong likelihood that any such successor judge would meet the same fate as did Judge Ford and he or she would be made the subject of yet another claim before a ruling could be made. We therefore direct that the Honorable Lynn Ford reassume jurisdiction in Cause No. C-86-113 to conduct a summary, yet due process hearing upon the question of whether the claim in C-86-113 or any other claim of which the court has knowledge, presents a reasonable basis for disqualification. If the Court has jurisdiction of any such claim and such claim is specious and a sham and intended solely to evade court jurisdiction, it should strike such claim. If the claim has no reasonable basis, the court should not disqualify.

Id. at 752-53. The case illustrates that litigants who engage in baseless, abusive attempts to obtain a change of judge should expect those attempts to fail and may face sanctions.

**Conclusion**

This matter has come before the Indiana Supreme Court on a petition to transfer jurisdiction following the issuance of a decision by the Court of Appeals. The petition was filed pursuant to Indiana Appellate Rule 57. The Court has reviewed the decision of the Court of Appeals. Any record on appeal that was submitted has been made available to the Court for review, along with all briefs that may have been filed in the Court of Appeals and all the materials filed in connection with the request to transfer jurisdiction. Each participating member

13

of the Court has voted on the petition. Each participating member has had the opportunity to voice that Justice's views on the case in conference with the other Justices.

Being duly advised, the Court DENIES the appellant's petition to transfer jurisdiction. The Court refrains from imposing sanctions or restrictions at this point, but Mr. Zavodnik can expect any further abusive litigation practices in any judicial forum in this state to be met with appropriate sanctions and restrictions. No petition for rehearing is permitted. *See* App. R. 58(B).

All Justices concur.