**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 30 2014, 8:48 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT, PRO SE:

**SONIA LONG**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

**R.C. RICHMOND, III**
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SONIA LONG, et al. | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  09A05-1308-CT-434 |
| | ) | |
| HEARTLAND RESIDENTIAL SERVICES, | ) | |
| INC., et al. | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Lynn Murray, Special Judge
Cause No. 09D01-1204-CT-15

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Sonia Long ("Long"), pro se, on behalf of herself and her ward, Timothy Urmston ("Urmston") filed an amended complaint against Heartland Residential Services, Inc. ("Heartland") and various agencies of the State of Indiana (collectively, "the State") to challenge the amount of funding the State provided under its Medicaid waiver program. After Long requested the trial court to dismiss her amended complaint without prejudice, the trial court dismissed her complaint with prejudice under Indiana Trial Rule 41(A)(2). Because, on appeal, Long makes no cogent argument showing that the trial court's order was erroneous, we affirm the trial court's judgment. Additionally, we deny Heartland's and the State's request for appellate attorney fees.

We affirm.

ISSUES

1. Whether the trial court erred by dismissing Long and Urmston's amended complaint with prejudice.

2. Whether Heartland and the State are entitled to appellate attorney fees.

FACTS

In April 2000, the Cass Superior Court appointed Long and her husband[1] as co-guardians of Urmston, who was born in 1944 and is not related to Long. Long lives in St. Joseph County, while Urmstrom lives in Cass County. Urmstrom lives in a house owned by Long and pays rent to Long. Urmstrom has developmental disabilities and receives support services under the Medicaid waiver program that is administered by the State.

In February 2011, Long met with Heartland about providing support services for Urmston. Heartland then contracted with the State to provide in-home supportive services to Urmston through the Medicaid waiver program. The State determined how many hours of service that Heartland could provide to Urmston and set out that amount in a Notice of Action ("NOA"). The State authorized funding to Heartland to provide services to Urmston for sixteen hours per day for five days per week. However, for multiple months in 2011, Heartland was able to provide 24/7 service to Urmston when he was at home because Heartland was able to get a budget modification request ("BMR") approved by the State. At some point, the State no longer approved the BMR for Urmston, leaving him with the original service authorization set out in his NOA. Long provided care to Urmston for the hours not funded by the program.

On March 5, 2012, Heartland sent Long a letter ("60-day Notice Letter"),[2] notifying her that it would no longer provide Medicaid services to Urmston on May 7, 2012. Specifically, the letter from Heartland's vice president provided:

---

[1] Long's husband was not included on any of the pleadings below and is not a party on appeal.
[2] Such a notice letter was required by the Medicaid waiver program so that a client had time to find another service provider.

3

I am writing to inform you that Heartland . . . will no longer be able to provide services to . . . Tim as of May 7, 2012, midnight. Additionally, please be informed that Heartland will not be providing any hours of services other than those that are authorized under Tim's NOA beginning March 12, 2012 at midnight.

Because you have stated that you have no intention of providing any care for Tim during the time when Heartland staff is not present, and further, because you have **deliberately refused** additional services that Tim needs and is entitled to under a Medicaid PA, this Notice is being provided to Adult Protective Services and various other government authorities so that emergency actions may be taken to keep Tim safe when Heartland is not in the home.

This was not an easy decision for Heartland to make, as our staff has come to truly enjoy Tim's company and takes great pride in providing him with the services he deserves. Unfortunately, your behavior has made it impossible for Heartland to continue services. Specifically:

1. You have consistently and intentionally interfered with Heartland's staff and their duties, including requiring each staff member to give you a special "report" at 10:00 p.m. each night, which includes what he ate and various other non-essential details. If you do not receive this report you call the police to the home;

2. You require staff members to "watch" the garage so that no one will break in;

3. You have refused to allow additional medically-based services for Tim under an approved PA; and,

4. You have behaved in an entirely inappropriate manner toward Heartland management, raising your voice at them, hanging up on them and threatening to sue them.

Simply put, you have created an overall atmosphere in which our staff can not function optimally and is harmful to Tim. You are also regularly abusing the 911 system, which is entirely and wholly unacceptable.

Heartland will do everything in its power to ensure a smooth transition for Tim to his new provider, and will work hard to make certain that he continues to receive the very best services we can provide until that time.

Should you have any questions about this matter, please contact me directly. You should be aware that I have instructed staff members not to discuss this particular matter with you. Instead their focus will be on care for Tim, and I encourage you to do the same.

(Appellee's App. 39-40) (emphasis in original).

On April 23, 2012, Long filed, pro se, the following pleadings with the trial court: (1) a complaint against Heartland on her behalf; (2) a complaint against Heartland on Urmston's behalf as his guardian; and (3) a motion for a temporary restraining order. Although she did not name them as parties, Long served copies of these pleadings to the Attorney General and the Cass County Prosecutor.[3]

In Long's complaint, she alleged the following claims against Heartland: Count I, breach of an oral contract; Count II, "intentional misrepresentation[;]" Count III, breach of duty, malicious conduct, and bad faith; Count IV, attempted malicious prosecution, harassment, libel, slander, and defamation of character; Count V, assault; Count VI, denial of her civil rights and violation of the Thirteenth Amendment to the United States Constitution.[4] (Appellee's App. 10) (upper case lettering altered to lower case). Under each count, Long sought damages from Heartland and the State (including BDDS and

---

[3] Additionally, Long sent a notice of tort claim and a summons to the Attorney General's Office. In her tort claim notice, Long alleged claims of "[h]arassment, discrimination, malicious conduct, [b]ad [f]aith, negligence[,] [b]reach of HIPPA, and other issues" against the Bureau of Developmental Disability Services ("BDDS") and Adult Protective Services ("APS") and asserted that the date of loss for the claim was "ongoing loss since 10-2008[.]" (Appellee's App. 196).

[4] Long argued that Heartland forced her to care for Urmston during the hours that were not covered by funding from the State and that such actions "constituted the action of slavery by Heartland." (Appellee's App. 18).

APS) "(if/when, these entities are added to this Complaint)." (Appellee's App. 7, 11, 13, 15, 16, 18-19).

In the complaint on behalf of Urmston, Long alleged the following claims: Count I, "breach of duty to a vulnerable individual[;]" Count II, "bad faith in the services provided[;]" Count III, "intentional neglect and abuse of a vulnerable individual[;]" and Count IV, denial of Urmston's civil rights.[5] (Appellee's App. 22, 26, 28) (upper case lettering altered to lower case).

In Long's motion for a temporary restraining order, she sought three things: (1) to "no longer be forced to care for her ward, Mr. Timothy Urmston[;]" (2) to have Heartland pay her "at the Indiana State rate of $19.52 per hour for her care-giving services[;]" and (3) to prohibit Heartland from discontinuing services for Urmston on May 7, 2012 or to have the State provide funding for twenty-four hour a day services with a different provider. (Appellee's App. 57-58).

On May 1, 2012, the trial court held a hearing on Long's motion for a temporary restraining order. During this hearing, the parties discussed that the State should be involved in this case because Long was making claims that could more appropriately be addressed by the State. After witnesses from Heartland[6] testified that it would not and could not stop providing services to Urmston until another service provider was found, the trial court denied Long's motion.

---

[5] Long alleged that the State had violated Urmston's civil rights "by not providing sufficient funding" and that Heartland violated his rights when it sent Long the 60-day Notice Letter to notify her that it would no longer be Urmston's Medicaid waiver service provider. (Appellee's App. 30).

[6] The trial court heard testimony from the executive director and the owner/president of Heartland.

On May 22, 2012, the Attorney General's Office, on behalf of the Attorney General and the Cass County Prosecutor, filed a Notice of Non-Involvement, indicating that they were not parties and would not be filing any responsive pleadings.

On June 15, 2012, Heartland filed a motion to dismiss. Specifically, Heartland sought to dismiss the action under Indiana Trial Rule 12(B)(7) for failure to join parties needed for just adjudication under Trial Rule 19, and it sought to dismiss counts II through VI of Long's complaint and counts I and IV of Urmston's complaint pursuant to Trial Rule 12(B)(6).

On July 25, 2012, Long sent a letter to the trial judge and filed separate motions requesting to add the Cass County Chief Deputy Prosecutor ("Deputy Prosecutor"), two employees from BDDS, and one employee of APS as defendants in the case (collectively, "the State employees").

On August 10, 2012, the Attorney General's Office filed, on behalf of the Deputy Prosecutor and the State employees, a response in opposition to Long's request to add them as defendants. The State asserted that joinder of these parties would be futile because Long had failed to state a claim against them, she had failed to comply with the Indiana Tort Claims Act, and because the State employees had immunity.

In late August 2012, the trial judge recused from the case, and a special judge was selected in late September 2012. Later, on November 26, 2012, Long filed a second motion for a temporary restraining order, seeking to "protect the health and safety of Mr. Urmston and to stop the physical and financial drain which has occurred for the Long family due to the requirement that Sonia Long care for Mr. Urmston a minimum of thirty-

7

six (36) hours per week." (Appellee's App. 127). Thereafter, Heartland filed a response in opposition to Long's motion and requested attorney fees, pursuant to INDIANA CODE § 34-52-1-1(b), for the costs incurred in responding to the motion.

On December 14, 2012, the trial court held a hearing on Heartland's motion to dismiss and on Long's second motion for a temporary restraining order. Subsequently, the trial court determined that BDDS and APS were "necessary parties" and ordered Long to join these parties as defendants within thirty days. When ruling on Heartland's motion to dismiss, the trial court ordered that Counts II, III, and IV (to the extent that they purported to assert claims for malicious prosecution, slander, and harassment) as well as Counts V and VI of Long's complaint were dismissed and that Counts I and IV of Urmston's complaint were dismissed. (App. 10; Appellee's App, 144). The trial court also denied Long's second request for a temporary restraining order and reserved its ruling on Heartland's request for attorney fees.

On January 7, 2013, Long sent the trial court a letter requesting a consultation, and the trial court denied her request. Then, on January 10, 2013, Long filed an amended complaint on behalf of herself and Urmston, and she added BDDS and APS as defendants.[7] In her amended complaint, she alleged, among other things, that Heartland breached its oral contract with her and its contractual agreement with the State and that Heartland had breached its duty to Long and Urmston and acted with bad faith and malicious conduct. Long also alleged that specific employees of the various State agencies had breached their duty to her and to Urmston. Long sought compensatory

---

[7] Long also added Liberty of Indiana and Indiana Professional Management Group as defendants.

damages, punitive damages, "Hedonic" damages, loss of consortium damages, and costs. (Appellee's App. 164).

In January 2013, Long sent the Attorney General several tort claims notices on behalf of herself and Urmston. These notices contained various dates of loss and contained various complaints against State agency employees, including complaints of breach of duty, improper supervision, failure to file for a new BMR, and failure to follow agency rules.

On March 1, 2013, the State filed a motion for summary judgment and argued, among other things, that it was entitled to summary judgment because Long had failed to properly or timely file a tort claim notice and because she had never served the Attorney General with a summons or copies of the amended complaint. Additionally, the State argued that Long's claims were barred by the Indiana Tort Claims Act and the statute of limitations and that she had failed to exhaust administrative remedies.

Approximately two weeks later, on March 19, 2013, Long filed a motion to dismiss her complaints without prejudice. Thereafter, Heartland filed an objection to a dismissal without prejudice and requested a hearing on Long's motion. It also argued that the trial court should dismiss Long's case *with* prejudice, and it moved for attorney fees in the event that the trial court dismissed the case without prejudice.

On May 16, 2013, the trial court held a hearing on Long's motion to dismiss and on Heartland's motion for attorney fees. At the beginning of the hearing, Long told the trial court that she wanted to withdraw her motion to dismiss and that she was prepared to argue against the State's summary judgment motion. The attorneys for Heartland and the

9

State then voiced their concern that Long could have given prior notification that she wanted to withdraw her motion. They also expressed the inconvenience of preparing for Long's motion and traveling the distance to the trial court when that could have been avoided by her providing notification. Heartland then stated that it would request attorney fees for the cost of preparation for and travel to the hearing if the trial court granted Long's motion to withdraw her motion to dismiss. After the trial court discussed "common courtesy" and acknowledged that Heartland's request for attorney fees was "well taken[,]" Long stated that she did not want to withdraw her motion and confirmed that she wanted to proceed with the hearing on her motion to dismiss. (Tr. 70)

In regard to her motion to dismiss, Long told the trial court that she had "requested the Federal Government to do an investigation to Medicaid issues in the State of Indiana" and stated that she should be able to dismiss her complaints without prejudice and later refile after she "g[o]t all the information that [she] need[ed]" and after she was able to get an attorney. (Tr. 72).

On May 20, 2013, the trial court, issued an order in which it dismissed Long's complaint with prejudice. The trial court's order provides, in relevant part:

> 3.     . . . For the most part the plaintiffs' claims are unintelligible and appear to ask the court to determine the amount and nature of services to be provided by the State agencies or Heartland to Urmston.
>
> * * * * *
>
> 6.     Indiana Trial Rule 41(A) provides than an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. This rule conveys upon the trial judge authority to exercise his or her discretion and impose conditions on a dismissal. Highland Realty, Inc. v. Indianapolis Airport Authority, 563 N.E.2d 1271 (Ind. 1990). This discretion may be exercised

10

to assure that a dismissal does not prejudice or unfairly inconvenience the defendants. *Id*.

7.     The plaintiffs' claims are largely undecipherable. Most of plaintiffs' claims against Heartland were dismissed for failure to state a claim upon which this court could grant relief. As correctly stated in the State's memorandum in support of its motion for summary judgment, plaintiffs' claims against the State defendants are not cognizable.

8.     Although plaintiff Long is representing herself in this action, and purports to also be representing her ward Urmston, in doing so she must be held to the same standard as trained legal counsel. Receveur v. Buss, 919 N.E.2d 1235, 1238 n.4 (Ind. Ct. App. 2000). Pro se litigants are held to the same standards as trained counsel and are required to follow procedural rules. Ballaban v. Bloomington Jewish Cmty, Inc., 982 N.E.2d 329 (Ind. Ct. App. 2013).

9.     In defending plaintiffs' claims in this action, Heartland has incurred legal fees of more than $18,000.00, and the State Attorney General's office has incurred substantial time and effort to-date. Said defendants would be prejudiced and unfairly inconvenienced if the plaintiffs were allowed to walk away and wait for a better day to refile their suit.

10.     Based upon the foregoing, the court finds and orders that as a proper term and condition of granting the plaintiffs' motion to dismiss this action, said dismissal should be with prejudice against the refiling thereof. As such, the defendant Heartland's motion for an award of attorney fees as well as the State's motion for summary judgment are deemed moot.

(App. 19-20).

On June 18, 2013, Long filed a "Motion for Corrections to Court for Change from Order of Dismissal with Prejudice to Order of Dismissal without Prejudice[,]" which the trial court treated as a motion to correct error and set for a hearing. (App. 24) (upper case lettering altered to lower case). Thereafter, Heartland and the State both filed a response in opposition to Long's motion, and Heartland requested attorney fees for its costs incurred in responding to Long's motion to correct error.

11

On July 15, 2013, the trial court held a hearing on Long's motion and Heartland's attorney fee request. Thereafter, the trial court issued an order denying Long's motion to correct error, which provided, in relevant part:

3.     Long's motion to correct [error] is a lengthy recitation of claims asserted in her original complaint and of new claims against the defendants based upon events that occurred after the hearing in May 2013.

4.     Neither Long's motion nor her responses to the defendants' statement in opposition . . . address the pertinent issue as to whether the court erred by dismissing her claims with prejudice.

5.     Long's motion to correct error should be denied, for the reasons cited in its order of May 20, 2013 and the statements in opposition filed by the defendants on July 15, 2013. It was within the proper discretion of this court to find and order that the plaintiffs' claims be dismissed with prejudice so that the defendants were not prejudiced or unfairly inconvenienced.

(App. 100). Additionally, after determining that Long's motion to correct error was "frivolous, unreasonable, and/or groundless[,]" the trial court awarded attorney fees of $750.00 to Heartland pursuant to INDIANA CODE § 34-52-1-1 for Heartland's fees in responding to Long's motion.

<u>DECISION</u>

Long appeals the trial court's order dismissing her case with prejudice, and Heartland and the State request that we grant them appellate attorney fees. We will address each argument in turn.

1.     <u>Dismissal with Prejudice</u>

Initially, we note that Long appeals pro se. As our Indiana Supreme Court has explained, a litigant "has every right to represent himself in legal proceedings, but a pro

12

se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014).

Here, Long appeals from the trial court's order dismissing her case with prejudice under Indiana Trial Rule 41(A)(2) and the subsequent denial of her motion to correct error. Although Long's appeal stems from the order dismissing her case with prejudice, she makes no argument—let alone any cogent argument—explaining how or why the trial court's order dismissing her claims with prejudice was erroneous. Instead, she appears to rehash claims raised in her amended complaint, and she asserts various challenges to procedural events that occurred during this underlying case, such as whether trial court staff erred with regard to how and where to file her complaint. We, however, are a Court of intermediate review, and we cannot review any newly raised claims. Because Long presents no cogent argument nor any citation to authority to show that the trial court's order was erroneous, she has waived review of this order on appeal. *See, e.g.*, *Zavodnik*, 17 N.E.3d at 264 (holding that the pro se appellant's claim was waived because he failed to support it with cogent argument or citation to relevant authority). *See also* Ind. Appellate Rule 46(A)(8)(a).[8]

2.    Appellate Attorney Fees

---

[8] In her Reply Brief, Long generally asserts that "the trial court was incorrect in its dismissal of Long's amended complaint with prejudice." (Long's Reply Br. 3). To the extent that she provides an argument to support this general assertion, it is waived because she raises it for the first time in her reply brief. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) ("The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived.").

Heartland and the State ("the Appellees") ask this Court to grant them appellate attorney fees under Appellate Rule 66(E).

Under Appellate Rule 66(E), we are authorized to "assess damages [including attorney fees] if an appeal, petition, or motion, or response, is frivolous or in bad faith." A decision to assess any appellate damages or attorney fees is "in [our] Court's discretion." App. R. 66(E). While Appellate Rule 66(E) allows us to award damages on appeal, "[w]e must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal." *Kroger Co. v. WC Associates, LLC*, 967 N.E.2d 29, 40 (Ind. Ct. App. 2012), *trans. denied*. "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.*

While we agree with Appellees that Long's appellate brief was not the model of clarity and did not completely adhere to the Appellate Rules, the Appellees have not shown that this appeal is "something more egregious" that requires the imposition of appellate attorney fees. Thus, we decline the Appellees' request to award appellate attorney fees under Appellate Rule 66(E).[9]

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.

---

[9] We also disagree with the Appellees' assertion that they should receive appellate attorney fees under Indiana Code § 34-52-1-1.