## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2019, 10:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT A.A.

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of S.A. (Minor Child),

and

A.A. (Mother) and C.A. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 30, 2019

Court of Appeals Case No.
18A-JT-2192

Appeal from the Owen Circuit Court

The Honorable Kelsey B. Hanlon, Judge

Trial Court Cause No.
60C02-1803-JT-58

**Crone, Judge.**

## Case Summary

[1]    A.A. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor child, S.A. ("Child"). Mother claims that she did not receive adequate notice of the termination proceedings, and therefore her due process rights were violated. Because the record establishes that she received adequate notice, we affirm.

## Facts and Procedural History

[2]    The relevant facts are undisputed. In January 2015, Child was born to Mother and C.A. ("Father") (collectively "Parents"). In September 2016, the trial court authorized the Indiana Department of Child Services ("DCS") to remove Child from Parents' custody. At that time, Parents were living in a tent. In October 2016, the court found Child to be a child in need of services ("CHINS") because of Parents' substance abuse issues and medical neglect of Child, as well as Father's acts of domestic violence. In its dispositional decree, the court ordered Parents to complete substance-related assessments and services, visit Child, maintain suitable housing and employment, and participate in chemical testing. Parents failed to comply with the decree, and in September 2017 the court changed Child's permanency plan from reunification to termination of parental rights with adoption.

[3]    On March 8, 2018, DCS filed a petition to terminate Parents' parental rights and a motion for hearing; the petition states that Parents resided at 620 South

Walnut Street in Bloomington.[1]  On March 9, the trial court set an initial hearing for April 2, and DCS sent notices of the petition and the initial hearing to Parents via certified mail at the Walnut Street address.  On March 14, Parents signed the certified mail receipts.  Mother's receipt appears in the record; she does not claim that the signature is not hers.  Appellant's App. Vol. 2 at 15.  Parents failed to appear at the initial hearing, during which the factfinding hearing was scheduled for July 20.  *See id*. at 4 (chronological case summary entry for April 2:  "*Cause comes on for initial hearing.…  Respondent Parents do not appear.  Court schedules fact-finding hearing on July 20, 2018 at 9:00 a.m.  Order to follow.*").  On April 3, an order on the initial hearing was sent to Parents via certified mail at the Walnut Street address.  On April 6, Parents signed the certified mail receipts.  Both receipts appear in the record.  *Id*. at 17-18.  Mother characterizes the signature on her receipt as "illegible" but does not claim that it is not hers.  Appellant's Br. at 6.  Parents failed to appear at the July 20 factfinding hearing, which was held in their absence.  The court took

---

[1] The trial court's chronological case summary ("CCS"), which was printed on December 18, 2018, lists Father's address as 620 South Walnut Street in Bloomington.  On September 11, 2018, more than a month after the termination order was issued, Mother notified the court that her current address is in care of Phillip Poff on East Fall Creek Road in Spencer.

the matter under advisement and on August 6 issued a four-page order, with findings of fact and conclusions thereon, terminating Parents' parental rights.[2]

[4] On September 5, 2018, the trial court received a handwritten letter from Mother "asking for a hearing to be put in place" and "to appeal the decisions that have been made on the termination of parental rights and adoption of [Child]." Appellant's App. Vol. 2 at 24. The letter states,

> I … never recieved [sic] notice of many court hearings after the [CHINS] case was closed and the order for termination was put in place. Thus being the reason for my absence in the prior court dates. I do believe I recieved [sic] one court notice that I may have signed for, but didn't have transportation, which I had called the courts and advised them of that at that time. I would like to appeal the decisions made and do not have an attorney to represent myself at this time. So I am also asking for one to be appointed to me.

*Id.* The record does not indicate that Mother called the court about a lack of transportation. The trial court appointed counsel for Mother, and counsel filed a motion to file a belated notice of appeal, which was granted.[3]

---

[2] Among other things, the trial court found that "Parents do not have stable housing and have been unable to maintain stable employment"; that they "failed to consistently participate in chemical testing" and "have not established a pattern of sobriety sufficient to allow the Child to be returned to their care"; that they "are unable or unwilling to address the safety concerns that led to the Child's removal from their care"; that "Child is placed in relative care with her maternal great aunt and great uncle"; and that "Child is bonded with her current placement and is thriving in their care." Appealed Order at 3-4.

[3] Father does not participate in this appeal.

# Discussion and Decision

[5] Mother does not challenge any of the trial court's findings or conclusions justifying its decision to terminate her parental rights. Instead, she claims that

> she did not receive adequate notice of the [termination] petition despite [the DCS family case manager] having met with her, to take a sample from [her] for a urine screen, only six (6) days after the petition was filed.[4] The parent-child relationship is fundamental in our society and because adequate service is necessary for due process [sic]. The [termination] order should be vacated and this case remanded.

Appellant's Br. at 10.[5] The record establishes that Mother was adequately served.

[6] We have held that Indiana Code Section 31-35-2-6.5 (see footnote 4 *supra*), "which lays out the notice requirements in a termination proceeding, …. does not require compliance with Indiana Trial Rule 4, which governs service of process and incorporates a jurisdictional component." *In re C.C.*, 788 N.E.2d 847, 851 (Ind. Ct. App. 2003), *trans. denied*. "Rather, in order to comply with

---

[4] We presume that this statement refers to Indiana Code Section 31-35-2-6.5, which provides in pertinent part that "[a]t least ten (10) days before a hearing on a petition or motion under this chapter: (1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter … shall *send* notice of the review to the persons listed in subsections (c) and (d)[,]" which include the child's parents. (Emphasis added.) The petition's affirmation was signed by the DCS family case manager, but the DCS attorney actually filed the petition for DCS. Appellant's App. Vol. 2 at 11. In any event, the statute did not require the family case manager to personally serve notice on Parents.

[5] In passing, Mother complains that she was never appointed counsel in the termination proceeding and that the trial court erred in conducting the factfinding hearing in her absence, but she cites no relevant authority and makes no cogent argument regarding these claims. Consequently, they are waived. *Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014).

the notice statute, one need only meet the requirements of Indiana Trial Rule 5, which governs service of subsequent papers and pleadings in the action." *Id*. "Indiana Trial Rule 5 authorizes service by U.S. mail and '[s]ervice upon the attorney or party shall be made by delivering or mailing a copy of the papers to him at his last known address.'" *Id*. (quoting Ind. Trial Rule 5(B)) (emphasis and footnote omitted). The record reflects that DCS served notices of the petition and the initial hearing as well as the factfinding hearing on Mother at 620 South Walnut Street in Bloomington, which apparently was her last known address, and that Mother actually received those notices at that address.[6] Therefore, we affirm.

[7] Affirmed.

Bradford, J., and Tavitas, J., concur.

---

[6] Mother notes that she was living in a tent when the CHINS proceeding was initiated, but she does not specifically assert that the Walnut Street address was not her last known address when the termination proceeding was initiated. Even if Mother did not actually receive the notices at that address, the notices were not defective. *See In re B.J.*, 879 N.E.2d 7, 16 (Ind. Ct. App. 2008) (holding that notice sent to parent's last known address was not defective, even though DCS knew that parent did not live at that address, where parent never notified DCS of his new address), *trans. denied*.