**Terry LIKENS and Marti Likens, Appellants–Plaintiffs,**

v.

**PRICKETT'S PROPERTIES, INC., and Jack Stump, Appellees–Defendants.**

No. 43A03–1008–PL–455.

Court of Appeals of Indiana.

Feb. 4, 2011.

Scott J. Lennox, Reed & Earhart Attorneys at Law, P.C., Warsaw, IN, for Appellants.

Dane L. Tubergen, Hunt, Suedhoff, Kalamaros, LLP, Fort Wayne, IN, for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Terry Likens and Marti Likens, husband and wife, appeal the trial court's grant of summary judgment in favor of realtor Jack Stump and real estate agency Prickett's Properties, Inc. Stump represented the buyers in a real estate transaction involving the Likenses' home but nevertheless directly contacted the Likenses,

who had their own realtor, to encourage them to accept the buyers' offer. The Likenses accepted the buyers' offer, but closing never occurred. The Likenses then sued Stump for negligence. According to Indiana Code chapter 25–34.1–10, Stump only owed the Likenses the duty to treat them honestly and not knowingly give them false information. Because the Likenses do not allege on appeal that Stump breached this specific duty, we affirm the trial court's grant of summary judgment in favor of Stump and the agency he works for.

### Facts and Procedural History

The Likenses listed their Backwater Road home in North Webster, Indiana, for sale with Remax realtor Carolyn Leiter. The Likenses signed an agency agreement with Leiter.

Stump is a realtor employed by real estate agency Prickett's Properties. Stump represented Zachary and Holli Gredy, who wished to purchase a home in the North Webster area. Stump showed the Likenses' home to the Gredys, and they wanted to buy it.

During the approximately weeklong negotiations that followed, Stump conveyed to the Likenses that the Gredys would not have the necessary cash to close for several months but that they would be able to close after concluding certain real estate transactions. Stump contacted the Likenses directly—and not through their own realtor Leiter—by phone and email and encouraged them to accept the Gredys' offer. At the time, the Likenses had another offer pending on their home which Leiter had encouraged them to accept instead. Excerpts from Stump's emails to Marti Likens provide:

- "I know I work differently from other realtors—*I try to satisfy both sides* and keep the 'experience of buying or selling' enjoyable."

- "My legal background includes the Naval Legal Court Recording school at Newport, Rhode Island; Naval Legal Officer's school at San Diego, CA and International Law at NETC Mayport, FL."

- "I know how to read and write contracts to *keep this even for both parties.* I'm not sure why other agents can't try to be helpful."

- "You did nothing wrong and I told your Dad this morning that the real problem is with your agent ... not you!"

- "[The Gredys] are finally convinced that your home is the one for them. I'll be getting together with them later today to write the offer. Again, *thank you for the opportunity to be of service.*"

Appellants' App. p. 129 (emphases added).

In addition, Stump advised the Likenses that the Gredys' offer "was a good deal" and that they should "accept" it. *Id.* at 134. Stump told them that Zachary Gredy was a "financial whiz" and there would be "no reason ... to worry" about a delayed closing. *Id.* at 140. Stump also told the Likenses that the Gredys had "a secret financial deal going on" that he could not disclose and that it was going to be a cash deal, which was "going to close," "no problem." *Id.* at 143; *see also id.* (Stump telling the Likenses that "Zach ... speaks seven languages, he's very smart, his wife is pregnant, they really need to get out of the house that they bought because of the mold . . . .").

On February 28, 2008, the Likenses and the Gredys executed a Purchase Agreement, which incorporated a Pre–Closing Possession Agreement and one Counter Offer. The first page of the Purchase Agreement lists Leiter as the listing broker and Stump as the selling broker. *Id.*

at 15. The final page of the Purchase Agreement provides:

> **25. ACKNOWLEDGMENTS:** Buyer and Seller acknowledge that each has received agency office policy disclosures, has had agency explained, and now confirms all agency relationships. Buyer and Seller further acknowledge that they understand and accept agency relationships involved in this transaction. By signature below, the parties verify that they understand and approve this Purchase Agreement and acknowledge receipt of a signed copy.

*Id.* at 20, 93. The terms of the Purchase Agreement provide that the Gredys would purchase the Likenses' Backwater Road home for $325,000. Closing was to occur on or before September 30, 2008. However, the Gredys were to receive possession on March 15, 2008, and pay the Likenses $2000 per month in rent until closing. In addition, the Gredys were required to place $10,000 in escrow. According to the Counter Offer, the earnest money was to be held by Stump in the form of a bank letter of guarantee of funds. *Id.* at 23.

Closing did not occur by September 30, 2008, and the bank letter of guarantee of funds was determined to be fraudulent. Accordingly, on February 9, 2009, the Likenses filed a multi-count complaint against the Gredys, Stump, and Prickett's Properties. As for the Gredys, the Likenses alleged breach of contract for, among other things, failing to close by September 30, 2008, and failing to make rent payments for November and December 2008, pay taxes, and obtain property insurance. The Likenses also alleged that the Gredys committed fraud in remitting the fraudulent bank letter of guarantee of funds and in stating that closing would occur as soon as they sold two of their properties when in fact one property was an office building

owned by Zachary's father and the other property was in foreclosure.

As for Stump, the Likenses alleged two counts: (1) negligence/breach of agency duty and (2) fraud. The Likenses asserted that although Stump was the Gredys' realtor, he "directly communicated with and advised [them] on the purchase/sale of the property" and encouraged them to accept the Gredys' offer because, among other things, the Gredys were "solid buyers." *Id.* at 11, 13. Because of Stump's direct communications with them, the Likenses alleged that "Stump entered into a constructive agency relationship with [them] throughout the term of the negotiations and transaction." *Id.* at 12. In addition, the Likenses alleged that Stump failed to ensure that the $10,000 bank letter of guarantee of funds was in fact valid and failed to ascertain the ownership/status of the properties claimed to be owned by the Gredys. Finally, the Likenses alleged that Prickett's Properties was liable for Stump's actions under the doctrine of respondeat superior.

In June 2010, Stump and Prickett's Properties filed a motion for summary judgment concerning the claims against them. As for negligence and breach of agency duty, they argued that Stump did not owe the Likenses a duty because Stump was the Gredys' agent and therefore no agency relationship existed between the Likenses and Stump. As for fraud, Stump and Prickett's Properties argued that the Likenses failed to prove that Stump knew that any of the Gredys' statements were false. Because Stump was not liable, they argued that Prickett's Properties could not be either.

A hearing on the motion for summary judgment was held in July 2010, *see id.* at 4 (CCS entry), following which the trial court entered summary judgment "in favor of Defendants Prickett's Properties, Inc.

and Jack Stump as to all claims raised against them in [the Likenses'] Complaint." *Id.* at 157. The Likenses now appeal.

### Discussion and Decision

■ The Likenses contend that the trial court erred in entering summary judgment in favor of Stump and Prickett's Properties on their negligence/breach of agency duty count only. *See* Appellants' Br. p. 4, 8; Appellees' Br. p. 5. They do not appeal the trial court's grant of summary judgment in favor of Stump and Prickett's Properties on their fraud claim. When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269 (Ind.2009). Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); *Dreaded, Inc.*, 904 N.E.2d at 1269–70. In answering these questions, the reviewing court construes all factual inferences in the nonmoving party's favor and resolves all doubts as to the existence of a material issue against the moving party. *Dreaded, Inc.*, 904 N.E.2d at 1270. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* Once the movant satisfies the burden, the burden shifts to the nonmoving party to designate and produce evidence showing the existence of a genuine issue of material fact. *Id.*

■ The Likenses argue that contrary to the Gredys' no-duty argument made in the trial court below, Stump owed them a common law duty because "it is clear that Stump went beyond acting as an agent for the Gredys and undertook to advise and coerce [them] into a course of action." Appellants' Br. p. 11. In order to establish a common law duty, the Likenses rely on the three *Webb v. Jarvis* factors: (1) relationship between the parties; (2) reasonable foreseeability of harm to the person injured; and (3) public policy concerns.[1] 575 N.E.2d 992, 995 (Ind.1991).

The Gredys respond that pursuant to Indiana statutory law, Stump, as the agent for the buyers in a real estate transaction, owed no duty to the Likenses as the sellers and that this statutory law supersedes any common law to the contrary.

Indiana Code chapter 25–34.1–10 governs real estate agency relationships. The Likenses do not acknowledge this body of statutory law. "Agency relationship" is defined as "a relationship in which a licensee represents a client in a real estate transaction." Ind.Code § 25–34.1–10–0.5. A "real estate transaction" is "the sale or lease of any legal or equitable interest in real estate." *Id.* § 25–34.1–10–8. Finally, a "client" is "a person who has entered into an agency relationship with a licensee" while a "licensee" is "an individual or entity issued a salesperson's or broker's real estate license by the Indiana real estate commission." *Id.* §§ 25–34.1–10–5, –6.8. Section 9.5 provides that "[a] licensee has an agency relationship with, and is representing, the individual with whom the licensee is working unless: (1) there is a written agreement to the contrary; or (2) the licensee is merely assisting the individual as a customer without compensation." According to these sections, Leiter—and

---

1. The Likenses also argue on appeal that Stump "voluntarily assumed a duty of care to [them] due to his conduct...." Appellants' Br. p. 13. Because this argument is not developed with cogent reasoning, it is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

not Stump—was the Likenses' agent. That is, the Likenses signed an agency agreement with Leiter, Leiter listed the Likenses' Backwater Road home for sale, and the Purchase Agreement unmistakably lists Leiter as the listing broker and Stump as the selling broker.

Section 11 defines the duties and obligations that a licensee owes to the buyer and the duties and obligations that the same licensee owes to the other party (the seller):

(a) A licensee representing a buyer or tenant has the following duties and obligations:

(1) To fulfill the terms of the agency relationship made with the buyer or tenant.

(2) To disclose the nature of the agency relationship with the buyer or tenant, and redefine and disclose if the relationship changes.

(3) To promote the interests of the buyer or tenant by:

(A) seeking a property with a price or lease rate and contract terms satisfactory to the buyer or tenant; however, the licensee is not obligated to locate other properties to purchase or lease while the buyer is under contract to buy property or while the tenant is under contract to lease property, unless otherwise agreed between the parties;

(B) presenting all offers to purchase and lease to and from the buyer or tenant immediately upon receipt of an offer regardless of whether the buyer is already under contract to buy or the tenant is under contract to lease property, unless otherwise directed by the buyer or tenant;

(C) disclosing to the buyer or tenant adverse material facts or risks actually known by the licensee concerning the real estate transaction;

(D) advising the buyer or tenant to obtain expert advice concerning material matters that are beyond the licensee's expertise;

(E) timely accounting for all money and property received from the buyer or tenant;

(F) exercising reasonable care and skill; and

(G) complying with the requirements of this chapter and all applicable federal, state, and local laws, rules, and regulations, including fair housing and civil rights statutes, rules, and regulations.

(b) A licensee representing a buyer or tenant shall not disclose the following without the informed consent, in writing, of the buyer or tenant:

(1) That a buyer or tenant will pay more than the offered purchase price or offered lease rate for the property or other contract concessions.

(2) What motivates the buyer to buy or tenant to lease the property.

(3) Any material or confidential information about the buyer or tenant unless this disclosure is required by law or where failure to disclose would constitute fraud or dishonest dealing.

*(c) A licensee representing a buyer or tenant owes no duties or obligations to the seller or landlord except that a licensee shall treat all prospective sellers or landlords honestly and not knowingly give them false information.*

*(d) A licensee representing a buyer or tenant owes no duty to conduct an independent investigation of the buyer's or tenant's financial ability to perform for the benefit of the seller or landlord or to verify the accuracy of any statement, written or oral, made by the buyer, the tenant, or a third party.*

(e) A licensee representing a buyer or tenant may:

(1) show properties in which the buyer or tenant is interested to other prospective buyers or tenants and may show competing buyers or tenants the same property or assist other buyers or tenants in purchasing or leasing a particular property without breaching any duty or obligation to the buyer or tenant; and

(2) *provide to a seller or landlord services in the ordinary course of a real estate transaction and any similar services that do not violate the terms of the agency relationship made with the buyer or tenant.*

*Id.* § 25–34.1–10–11 (emphases added).

Thus, according to Section 11, a licensee representing a buyer owes no duties or obligations to the seller, except that a licensee shall treat all prospective sellers honestly and not knowingly give them false information. *Id.* § 25–34.1–10–11(c). In addition, a licensee representing a buyer owes no duty to conduct an independent investigation of the buyer's financial ability to perform for the benefit of the seller or to verify the accuracy of any statement, written or oral, made by the buyer or a third party. *Id.* § 25–34.1–10–11(d). Finally, a licensee representing a buyer may provide to a seller services in the ordinary course of a real estate transaction and any similar services that do not violate the terms of the agency relationship with the buyer. *Id.* § 25–34.1–10–11(e)(2).

Here, the basis of the Likenses' negligence count against Stump is that he directly communicated with and advised them on the sale of their home, failed to ensure that the bank letter of guarantee of funds was in fact valid, and failed to ascertain the ownership/status of the Gredys' alleged properties (which supposedly had to be sold before they could close on the Backwater Road property). Indeed, Stump had a duty to treat the Likenses honestly and not knowingly give them false information. But the negligence count against Stump does not allege any violation of this clearly-articulated statutory duty.[2] Moreover, Section 11 explicitly states that Stump owed no duty to conduct an independent investigation of the Gredys' financial ability to perform for the benefit of the Likenses or to verify the accuracy of any statement, written or oral, made by the Gredys or a third party. Stump therefore had no duty to investigate the bank letter of guarantee or the Gredys' financial ability to pay for the Backwater Road property. Finally, while Stump's actions in directly contacting the Likenses to encourage them to accept the Gredys' offer may seem inappropriate, Stump, as the buyers' agent, is allowed to provide the Likenses services in the ordinary course of a real estate transaction and any similar services that do not violate the terms of his agency relationship with the Gredys. There is no allegation here that Stump breached his agency relationship with the Gredys. In sum, the Likenses claim that Stump owed them a duty which simply does not exist in Indiana Code chapter 25–34.1–10.

■ Even if we were to construe the Likenses' argument to be that Stump owed them a separate and distinct common law duty, according to Section 15, "The duties and obligations of a licensee set forth in this chapter supersede any fiduciary duties of a licensee to a party based on common law principles of agency to the extent that those common law fiduciary duties are inconsistent with the duties and obligations

---

2. Again, the Likenses do not appeal the summary judgment ruling as it pertains to the fraud count against Stump, which would undoubtedly concern whether Stump knowingly gave the Likenses false information.

set forth in this chapter." Ind.Code § 25–34.1–10–15. Accordingly, the Likenses cannot use common law principles to establish a duty on the part of Stump that does not exist in Indiana Code chapter 25–34.1–10.

Finally, to the extent that the Likenses argue that Stump represented both them and the Gredys at the same time, Sections 7 and 12 discuss limited agency. *Id.* §§ 25–34.1–10–7, –12. A "limited agent" is a licensee who, "with the written and informed consent of all parties to a real estate transaction, represents both the seller and buyer ... and whose duties and responsibilities to a client are only those set forth in this chapter." *Id.* § 25–34.1–10–7. In addition, Section 12 provides that a licensee "may act as a limited agent only with the written consent of all parties to a real estate transaction. The written consent is presumed to have been given and all parties are considered informed for any party who signs a writing or writings at the time of entering into an agency relationship with the licensee that contains" certain specified information. Here, there is simply no evidence of a writing that the Gredys and the Likenses consented to Stump acting as a limited agent for both of them.

Because Stump did not owe the Likenses a duty as the Likenses assert in their complaint, the trial court properly entered summary judgment on the Likenses' negligence claim against Stump. And because Stump is not liable, Prickett's Properties cannot be liable under the doctrine of respondeat superior. We therefore affirm the trial court.

Affirmed.

BAKER, J., and BARNES, J., concur.