# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 16 2016, 8:21 am

CLERK
of the supreme court,
court of appeals and
tax court

---

APPELLANT PRO SE

Delmas Sexton, II
New Castle, Indiana

ATTORNEYS FOR APPELLEE
ALLEN COUNTY PUBLIC
DEFENDER AND P. STEPHEN
MILLER

Casey B. Cox
Micah J. Nichols
Beers Mallers Backs & Salin, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
ALLEN COUNTY POLICE
DEPARTMENT, ET AL.

John O. Feighner
Andrew L. Teel
Lindsey C. Swanson
Haller & Colvin, P.C.
Fort Wayne, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Delmas Sexton, II,

*Appellant-Plaintiff,*

v.

State of Indiana: Allen County Public Defender's Office, P. Stephen Miller as Deputy Public Defender of Allen County; Allen County Police Department; Allen County Sheriff's Department; Captain Ron Rayl, Allen County Sheriff's Department; Kenneth C. Fries as the Sheriff of Allen County; Allen County Jail Confinement Sergeant Jones-Schild; Allen County Jail Confinement Corporal Poling; and Allen County Jail Confinement Officer C. Wall,

*Appellee-Defendants.*

March 16, 2016

Court of Appeals Case No. 02A03-1504-CT-124

Appeal from the Allen Superior Court

The Honorable Terry C. Shewmaker, Special Judge.

Trial Court Cause Nos. 02D01-0712-CT-547 02C01-1011-MI-2010

**Mathias, Judge.**

[1] Delmas Sexton, II ("Sexton"), an inmate at the New Castle Correctional Facility, brought a civil action against the Allen County Public Defender and another civil action against the Allen County Police Department (collectively "the Allen County Defendants") alleging civil rights violations based on a conspiracy in Allen Superior Court. Sexton appeals the trial court's grant of summary judgment in favor of the the Allen County Defendants and dismissal

of the cases with prejudice against him. Sexton raises numerous issues on appeal, which we restate and renumber as:

> I. Whether the trial court abused its discretion in striking Sexton's response to the Allen County Defendants' motion for summary judgment;
>
> II. Whether the trial court erred in granting the Allen County Defendants' motion for summary judgment;
>
> III. Whether the trial court abused its discretion in denying Sexton's motions for change of judge; and,
>
> IV. Whether the trial court abused its discretion in placing future filing restrictions on Sexton.

[2] We affirm.

## Facts and Procedural History

[3] On December 5, 2007, Sexton filed a complaint against the Allen County Public Defender ("public defender case") alleging that he had been deprived of discovery materials and legal mail as part of a conspiracy to keep Sexton in prison and unable to represent himself. At the time, Sexton was incarcerated in the Allen County Jail on forgery charges, theft charges, and for being a habitual offender. On May 23, 2008, the State of Indiana dismissed these charges against Sexton.

[4]     On November 30, 2010, Sexton filed a complaint against the Allen County Police Department ("police department case") alleging violations of the Indiana Constitution and the Indiana Public Records Act. After several years of Sexton filing voluminous motions, objections, and other documents, the Allen County Defendants filed a joint motion for summary judgment, designation of evidence, and memorandum in support on October 1, 2014.

[5]     Sexton filed a response to the motion for summary judgment, designation of evidence, and memorandum of law with the prison librarian on October 31, 2014. The CCS reflects that his response was filed on November 7, 2014, but was not received by the court until November 21, 2014. In his response, Sexton also filed a cross-motion for summary judgment in the police department case.

[6]     Sexton submitted numerous affidavits that alleged a broad criminal conspiracy involving all levels of the Indiana judiciary, attorneys, and law enforcement officials. He also asserted in these affidavits that officials in the Allen County Public Defender's Office and various attorneys and judges in Northern Indiana conspired to frame him for fraud and alter and destroy evidence in that case. He then submitted "affidavits of receipt" from several of the same individuals and others involved in both the public defender case and the police department case claiming that these individuals received large sums of money from an alleged Drug Trafficking Organization ("DTO") to keep Sexton incarcerated and deprived of his rights. *See e.g.* Appellant's App. p. 736. These affidavits also allege that these individuals received large sums of money for trafficking drugs

and motorcycles, arranging murders, and disposing of dead bodies–all on behalf of the DTO.

[7] Sexton claims that the purpose of this conspiracy is to advance the DTO's objectives of drug and motorcycle trafficking and to keep Sexton incarcerated.[1] According to Sexton, the DTO involves over 150 members, including attorneys, law enforcement officials, and judicial officers at the county, state, and federal level. Sexton alleges that the DTO makes "snuff" films[2] starring state and federal judges. Specifically, Sexton alleges without support in any of the admissible designated evidence that Judge Shewmaker and U.S. District Court Judge Theresa Springman starred in a snuff film where Brookley Louks was murdered.

[8] On December 22, 2014, the Allen County Police Department filed a motion to strike Sexton's cross-motion for summary judgment or alternatively a response to Sexton's cross-motion for summary judgment. On January 6, 2015, the Allen County Defendants filed a joint-motion to strike Sexton's response to defendant's motion for summary judgment, supported by affidavits from the individuals denying that they signed and executed the "affidavits of receipt" that Sexton submitted in his response. The trial court held a hearing on all

---

[1] Sexton is currently incarcerated for a murder conviction at the New Castle Correctional Facility, and his projected release date is 2042. See
http://www.in.gov/apps/indcorrection/ofs/ofs?lname=sexton&fname=delmas&search1.x=0&search1.y=0.

[2] A "snuff" film is a pornographic movie of an actual murder. See
http://oxforddictionaries.com/us/definition/american_english/snuff-film.

pending motions on January 12, 2015. At the hearing, Sexton specifically accused Special Judge Shewmaker of conspiring with Sexton to arrange the murder of U.S. Federal Judge Joan Lefkow and her family on behalf of the DTO. Tr. p. 9.

[9] After the hearing, on January 30, 2015, the Allen County Defendants filed two supplemental affidavits supporting the motion to strike Sexton's response to defendants' motion for summary judgment. In response, on February 18, 2015, Sexton filed a verified motion to strike defendants' affidavits, verified objection to defendants' motion to strike Sexton's cross-motion for summary judgment, verified belated motions for change of judge in both the public defender case and the police department case, and a verified motion to permit testimony of witnesses at a summary judgment re-hearing in the public defender case.

[10] On March 6, 2015, the trial court issued an order in both the public defender case and the police department case disposing of all pending motions and granted summary judgment in favor of the Allen County Defendants. The court also struck Sexton's response to the motion for summary judgment and designations of evidence as sham and false pleadings. Further, the trial court imposed future filing restrictions on Sexton due to his history as an abusive litigant.[3] Sexton filed a notice of appeal in both cases. Sexton filed a motion to consolidate the appeals, which our court granted on August 18, 2015.

---

[3] Sexton has had around fifty cases before our court and our supreme court.

# I. Sexton's Response and Designated Evidence

[11] Sexton argues that the trial court abused its discretion in striking Sexton's response to the Allen County Defendants' motion for summary judgment and designated evidence. "The trial court has broad discretion in ruling on the admissibility of evidence." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010) (quoting *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005)). Also, "[t]his discretion extends to rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules." *Id.*

[12] In his response to Defendants' motion for summary judgment, Sexton submitted his own affidavit along with the affidavits of several other individuals allegedly involved in the conspiracy in his designated evidence. The trial court determined that Sexton's response and designated evidence was untimely and therefore inadmissible. Under Indiana Trial Rule 56(C), "[a]n adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits."

[13] The Allen County Defendants filed their motion for summary judgment on October 1, 2014. The CCS reflects that Sexton filed his response on November 7, 2014, and that the court received it on November 21, 2014. However, the prison librarian certified and signed the response on October 31, 2014. Sexton argues that his response was timely under the prison mailbox rule.

[14] Under the prison mailbox rule, the date a pro se prisoner delivers notice of appeal to prison authorities should be considered the date of filing as opposed

to the date of receipt. *Morales v. State*, 19 N.E.3d 292, 296 (Ind. Ct. App. 2014). However, our supreme court in *Dowell v. State*, 922 N.E.2d 605, 609 (Ind. 2010), specifically noted that the timing for motions to correct error under the Indiana Trial Rules is different than for notices of appeal and that, if independently verifiable means like registered mail or third-party carrier are not used, filing of a motion to correct error occurs on the date the filing is in the hands of the clerk. *Id.* Like a motion to correct error, a response to a summary judgment motion is governed by the Indiana Trial Rules. Because Sexton's response was sent via regular mail and considered filed with the clerk on November 7, 2014, it is untimely, as the trial court determined.

[15] Even if Sexton's response and designated evidence were timely, his claims are frivolous under Indiana Code section 34-58-1-2. The statute provides in relevant part:

> (a) A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:
>
> > (1) is frivolous;
> >
> > (2) is not a claim upon which relief may be granted; or
> >
> > (3) seeks monetary relief from a defendant who is immune from liability for such relief.
>
> (b) A claim is frivolous under subsection (a)(1) if the claim:

(1) is made primarily to harass a person; or

(2) lacks an arguable basis either in:

(A) law; or

(B) fact.

In *Smith v. Wrigley*, our court adopted the United States Supreme Court's interpretation of factually frivolous claims as those "describing fantastic or delusional scenarios." 908 N.E.2d 354, 358 (Ind. Ct. App. 2009). For example, fantastic or delusional claims may include those involving "little green men, a recent trip to Pluto, or experiences in time travel." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1959 (2009). As such, a plaintiff's claim should not be dismissed as frivolous "simply because the court finds the plaintiff's allegations unlikely." *See Denton v. Hernandez*, 504 U.S.25, 33 (1992).

[16] Sexton's complaints detail an elaborate conspiracy of civil rights violations against him. He alleges that over 150 county, state, and federal officials are members of the Drug Trafficking Organization. He claims that the DTO's purpose is to traffic drugs and motorcycles and to make "snuff" films starring members of the judiciary. Sexton believes that members of the Allen County Public Defender and Allen County Police Department wanted to keep him incarcerated because of his prior involvement with the DTO. Sexton even

accused Special Judge Shewmaker of paying him to facilitate the murder of Federal Judge Joan Lefkow and her family.

[17] All of the affidavits Sexton submitted in his designated evidence were handwritten in the same or similar handwriting. It is entirely unlikely that over ten different individuals would have the same handwriting or would submit handwritten documents, given the pervasiveness of computer technology in modern society. Further, the Allen County Defendants supported their motion to strike Sexton's response to defendants' motion for summary judgment with affidavits from these same individuals denying that they received money from the DTO or signed and executed "affidavits of receipt." Even more, the signatures provided in Sexton's "affidavits of receipt" do not match the signatures in the affidavits presented by Allen County Defendants.

[18] Although Sexton submitted his own affidavit detailing the conspiracy against him, his delusion is the only evidence that any of these events actually occurred. His self-serving affidavit was accompanied by patently false and forged affidavits that destroy his personal credibility. Moreover, his case has proceeded to the summary judgment stage of litigation, allowing him the opportunity to present evidence supporting his claims. *See Smith*, 908 N.E.2d at 359.

[19] In the case before us, Sexton's claims are not just unlikely; his claims are outrageous. He alleges that over 150 officials are involved in an organization that traffics drugs and creates pornographic films, starring judges, where people are murdered. Sexton claims that these individuals are involved in a conspiracy

to keep him incarcerated. Sexton also undoubtedly filed these complaints to harass Allen County officials, as he has filed twenty-seven complaints in Allen County since 2002. We have no difficulty concluding as a matter of law that Sexton's claims are frivolous under Indiana Code Section 34-58-1-2.

[20] For all of these reasons, the trial court did not abuse its discretion in striking Sexton's response to the Allen County Defendants' motion for summary judgment.

## II. Summary Judgment

[21] Sexton also argues that the trial court erred in granting the Allen County Defendants' motion for summary judgment. Our standard of review of summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. In answering these questions, the reviewing court construes all factual inferences in the nonmoving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant satisfies the burden, the burden shifts to the nonmoving party to designate and produce evidence showing the existence of a genuine issue of material fact.

*Likens v. Prickett's Properties, Inc.*, 943 N.E.2d 816, 820 (Ind. Ct. App. 2011) (citations and internal quotations omitted). We will reverse if the law has been incorrectly applied to the facts. *Woodruff v. Indiana Family and Social Services Admin.*, 964 N.E.2d 784, 790 (Ind. 2012). Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record. *Id* (citing *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009)).

[22] After the trial court struck Sexton's response and designated evidence as untimely and as a sham and false pleading, he was left with no evidence to carry his burden to defeat the Allen County Defendants' motion for summary judgment. Therefore, the trial court properly granted summary judgment in favor of the Allen County Defendants.

### III. Belated Motion for Change of Judge

[23] Further, Sexton argues that the trial court abused its discretion in denying Sexton's belated motions for change of judge. He specifically claims that Judge Shewmaker has a bias against him because they participated in murder and drug deals together as members of the DTO.

[24] A motion for change of judge is governed by Indiana Trial Rule 76, which provides in relevant part:

> (B) In civil actions, where a change may be taken from the judge, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground

therefor by a party or his attorney. Provided, however, a party shall be entitled to only one [1] change from the judge.

* * * * *

(C) In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such application for change of judge (or change of venue) shall be filed not later than ten [10] days after the issues are first closed on the merits. Except:

(6) if the moving party first obtains knowledge of the grounds for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days, and the ruling of the court may be reviewed only for abuse of discretion.

[25]  Under Indiana Trial Rule 76, a party is entitled to one change of judge. As the trial court noted in its order, Sexton has filed multiple motions for change of judge that were not within the time limitations required by the rule. If the motion is not within the time limitations, we review the trial court's ruling on a motion for change of judge for an abuse of discretion. *See Moore v. Liggins*, 685 N.E.2d 57, 62 (Ind. Ct. App. 1997). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and

circumstances before it. *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 925 (Ind. Ct. App. 2003).

[26] The law presumes that a judge is unbiased and unprejudiced in the matters that come before the judge. *James v. State*, 716 N.E.2d 935, 940 (Ind. 1999). Sexton claims that the trial court is biased against him because Judge Shewmaker helped Sexton facilitate the murder of Judge Joan Lefkow and her family in 2004 and 2005. When Sexton made this statement at the January 12, 2015 hearing, Judge Shewmaker responded, "That's absolutely ridiculous." Tr. p. 9.

[27] Sexton argues that Judge Shewmaker should have disqualified himself because of their prior relationship. However, the only evidence that Sexton presents that Judge Shewmaker is biased or prejudiced against him is based on Sexton's grand delusion and unsupported by any credible, corroborating evidence. Therefore, we cannot say that the trial court abused its discretion in denying Sexton's belated motions for change of judge.

## IV. Future Filing Restrictions

[28] Finally, Sexton contends that the trial court abused its discretion by imposing future filing restrictions on him. He asserts that the record does not support that he is an abusive, prolific filer.

[29] There is no right to engage in abusive litigation, and the state has a legitimate interest in the preservation of valuable judicial and administrative resources. *Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014). The Indiana General

Assembly and our supreme court have given the courts of this state tools to deal with abusive litigation practices. *Id.*

[30] First, Indiana Code section 34-52-1-1(b) (2008) allows a court in a civil action to award attorney's fees to the prevailing party if the court finds that the other party asserted a claim that was frivolous, unreasonable, or groundless, or litigated an action in bad faith. *Id.* Because the threat of monetary sanctions may do little to deter abusive litigants who are essentially judgment-proof, the Indiana General Assembly has also enacted procedures to prevent abusive civil litigation by criminal "offenders." *Id.* Indiana Code section 34-58-1-2 (2008) authorizes a court to review an offender's claim and bar it from going forward if it is frivolous (that is, made primarily to harass or lacking an arguable basis in law or fact), is not a claim on which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. *Id.*

[31] "The courts of this state, after due consideration of an abusive litigant's entire history, may fashion and impose reasonable conditions and restrictions [], guided by those in statutes, rules and cases [], on the litigant's ability to commence or continue actions in this state that are tailored to the litigant's particular abusive practices." *Id.* at 266; *see also Sumbry v. Misc. Docket Sheet for Year 2003*, 811 N.E.2d 457 (Ind. Ct. App. 2014). A court may be justified in imposing restrictions such as the following:

- Require the litigant to accompany future pleadings with an affidavit certifying under penalty of perjury that the allegations are true to the best of the litigant's knowledge, information, and belief;

- Direct the litigant to attach to future complaints a list of all cases previously filed involving the same, similar, or related cause of action;
- Direct that future pleadings will be stricken if they do not meet the requirements that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach averment of a pleading shall be simple, concise, and direct." T.R. 8(A)(1) and (E)(1);
- Require the litigant to state clearly and concisely at the beginning of a motion the relief requested;
- Require the litigant to provide specific page citations to documents alleged by the litigant to support an argument or position;
- Limit the litigant's ability to request reconsideration and to file repetitive motions;
- Limit the number of pages or words of pleadings, motions, and other filings;
- Limit the length of the title that may be used for a filing;
- Limit the amount or length of exhibits or attachments that may accompany a filing;
- Instruct the clerk to reject without return for correction future filings that do not strictly comply with applicable rules of procedure and conditions ordered by the court.

*Zavodnik*, 17 N.E.3d at 268-69 (citing *Procup v. Strickland*, 792 F.2d 1069, 1072-73 & 1073 n. 9 (11th Cir. 1986)).

[32]  Sexton has filed voluminous, repetitive motions, objections, and other documents. He has repeatedly filed pleadings that the trial court advised Sexton are inadmissible, and many of his "supporting" documents are massive, disorganized, repetitive, defective, lacking in merit, and even illegible at times. Our own court has witnessed these same practices in the pleadings, motions, and supporting documents submitted in Sexton's appeal. Furthermore, Sexton has litigated over fifty cases before our court and our supreme court and has

filed approximately twenty-seven complaints in Allen County since 2002. Sexton's tactics cause unnecessary confusion and burden to court staff and opposing parties.

[33] Here, the trial court imposed the following future filing restrictions on Sexton due to his history of abusive litigation practices:

A) Petitioner is required to accompany future pleadings with an affidavit containing his original signature certifying under penalty of perjury that the allegations are true to the best of the Petitioner's knowledge, information, and belief;

B) Petitioner is required to attach to all future complaints a list of all cases previously filed involving the same, similar, or related causes of action;

C) Petitioner is advised that future pleadings will be stricken and deemed unacceptable if they do not meet the requirements that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each averment of any pleading shall be concise, simple, and direct pursuant to Ind. Trial Rule 8(A)(1) and (E)(1);

D) Petitioner is required to state clearly and concisely at the beginning of a motion the relief requested;

E) Petitioner is required to provide specific page citations to documents alleged by the Petitioner to support an argument or position;

F) Petitioner is limited to filing one (1) request for reconsideration and may not file any repetitive motions;

G) Petitioner shall not present any filing in excess of five (5) pages, including pleadings, motions, and other filings;

H) Petitioner is required to title any filing in a short and concise manner that incorporates not more than two (2) lines.

I) Petitioner is limited to including exhibits and/or attachments that accompany any filing to five (5) pages in length;

J) Petitioner is advised that the court has instructed the Clerk to reject without return for correction future filings that do not strictly comply with the applicable rules of procedure and the conditions herein ordered by the court.

Appellant's App. pp. 38-39.

[34] Based on Sexton's litigation history, we conclude without hesitation that he is an abusive litigant. The restrictions the trial court imposed on Sexton are nearly identical to the restrictions that our supreme court approved of in *Zavodnik*. We conclude that the trial court properly imposed future filing restrictions on Sexton that protect his access to courts but also preserves valuable judicial and administrative resources.

## Conclusion

[35] The trial court properly struck Sexton's response to Allen County Defendants' motion for summary judgment and did not err in granting summary judgment in favor of the Allen County Defendants. Further, the trial court did not abuse its discretion in denying Sexton's motion for change of judge or by placing future filing restrictions on Sexton after determining that he is an abusive litigant.

[36] Affirmed.

Kirsch, J., and Brown, J., concur.